IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PAULA M. POLLEY                                                                                PLAINTIFF

v.                            Civil No. 07-5204

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Paula Polley, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed her application for DIB on April 12, 2004, alleging an amended onset date of November 13, 2003,[1] due to migraine headaches, fibromyalgia, and diabetes. (Tr. 65-67, 93). An administrative hearing was held on September 21, 2006. (Tr. 359-394). A supplemental hearing was then held on February 16, 2007. (Tr. 394-412). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 55 years old and possessed a high school education. (Tr. 87, 94, 362-363). The record reveals that she had past relevant work experience ("PRW") as a circuit board loader, machine operator, and a solderer.

---

[1]Plaintiff amended her onset date at the hearing. (Tr. 368-369).

On April 24, 2007, the Administrative Law Judge ("ALJ") determined that plaintiff suffered from a combination of severe impairments, but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 15-16). The ALJ found that plaintiff maintained the RFC to perform light work. With the assistance of a vocational expert, the ALJ determined that plaintiff could return to her PRW in assembly work.

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on September 8, 2007. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

3

**Discussion**:

Of particular concern to the undersigned is the fact that the plaintiff was diagnosed with chronic pain, fibromyalgia, and neuropathy. The record shows that she was prescribed a combination of Methadone, Oxycodone, Neurontin, Soma, and Ultram to treat her pain. The ALJ is required to consider the dosage, effectiveness and side effects of the plaintiff's medications. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006). We note that Methadone and Oxycodone are both controlled substances. *See* PDR Health, *at* www.pdrhealth.com. Ultram is also a narcotic-like pain reliever used to treat moderate to severe chronic pain when treatment is needed around the clock. *See id*. Further, Soma is a muscle relaxer and Neurontin is an anticonvulsant used to treat nerve pain. *See id*. It is noted that each of these medications may cause drowsiness, dizziness, lack of coordination, and confusion. *Id*. When medications are taken in combination, these side effects can be increased or altered. Plaintiff testified that these medications made her sleepy. Further, in September 2005, her doctor noted that plaintiff was "a little bit tired," and the Methadone seemed to be "accumulating on her a little bit." (Tr. 350). Accordingly, at the very least, we believe the ALJ should have developed the record concerning special limitations that should be placed on plaintiff due to her use of such strong pain medications.

Although the record does indicate that plaintiff's pain showed some response to her medication regimen, she never reported being totally pain free. Given the nature of the medications prescribed and the nature of plaintiff's impairments, we believe the ALJ should have considered plaintiff's residual pain when determining that she could return to her previous employment as an assembly worker. Considering the fact that plaintiff required this level of

medication to treat her pain, it is quite possible that her ability to sit, stand, reach, crouch, crawl, kneel, balance, climb, squat, finger, and handle were also limited by her chronic pain and neuropathy. On August 25, 2005, Dr. Embry, plaintiff's treating doctor, completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) form. (Tr. 299-301). He indicated that the plaintiff could occasionally lift less than ten pounds, must periodically alternate sitting and standing to relieve pain, could occasionally climb and balance, and could never kneel, crouch, or crawl. (Tr. 299-301). We also note that on February 16, 2007, Dr. Embry completed a second RFC assessment. (Tr. 352-355). At this time, he indicated that plaintiff's ability to occasionally lift would be dependent upon how she was feeling at the time, but that on some occasions she could occasionally lift more than 25 pounds and could occasionally lift nothing. He went on to state that she could not frequently be expected to lift more than 10 pounds, and would not tolerate standing or walking for long periods of time. Further, when plaintiff was feeling poorly, Dr. Embry indicated that it was possible that she not be able to sit more than 4 hours. Dr. Embry also stated that plaintiff could rarely tolerate climbing, balancing, kneeling, crouching, and crawling due to her fibromyalgia. He also indicated that plaintiff should not work around hazards or vibrations due to her peripheral neuropathy. (Tr. 355). The ALJ discredited this second statement, stating that it was inconsistent with Dr. Embry's treatment notes.

While Dr. Embry's notes do indicate that plaintiff was responding to her pain management regimen and tolerating it well, his records do not state that plaintiff was able to perform all activities. As there is no evidence in the record to suggest that plaintiff was able to perform these activities, we do not believe the ALJ's determination is supported by substantial evidence. Further, although there are RFC assessments in the record from non-examining

AO72A
(Rev. 8/82)

doctors, the assessments of doctors who have treated plaintiff once or not at all do not constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Therefore, on remand, the ALJ is directed to reconsider his RFC assessment, taking into consideration the medications prescribed to treat plaintiff's pain, any limitations resulting from those medications, and any residual pain not fully treated by the medication.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 18th day of September 2008.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE